Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, *v.* Dorothy P. Beyer, Appellant.

Argued May 9, 1975, before Judges CRUMLISH, JR., WILKINSON, JR., and BLATT, sitting as a panel of three.

*James M. Shilliday,* with him *Douglas W. Reed,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., June 19, 1975:

This is a direct administrative appeal from an order of the Unemployment Compensation Board of Review affirming a referee's determination that Appellant voluntarily terminated her employment without cause of a necessitous and compelling nature which rendered her ineligible for compensation under Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937), *as amended,* 43 P.S. §802(b)(1). The issues to be resolved here are whether the referee's findings of fact, which were in effect adopted by the Board, are sufficient to support the legal conclusion of a voluntary termination, and, if so, whether these findings are supported by substantial evidence.

Our review of the record reveals the following: Appellant, Dorothy R. Beyer, was last employed as a barmaid by the Glendale Fireman's Association, Inc. in Carnegie, Pennsylvania. Her last day of work at the club was

June 7, 1974, a Friday. The next evening she returned to the club on her off hours for a drink. The bartender, or steward, apparently believed that she had had enough to drink, and refused her further service. Thereafter, a disagreement arose between Appellant and one of the trustees of the club which Appellant alleges resulted when the trustee asked her why she had the keys she used to open the club on her duty days on the bar. She testified that she told him that "if I wanted to put my keys on the bar I can." The trustee then picked up or was handed the keys and walked away. Appellant construed this action by the trustee as a discharge and did not return to work. This version of the events, however, was sharply contradicted by the trustee who appeared on behalf of the employer. The crux of his testimony is contained in the following passages:

"Q.  Would you state for the record your reasons for taking her keys?

"A.  I came in the club about 1 o'clock in the morning. Before I came in there was a discussion between Vince Saperito and the steward of the club who had shut her off from drinking . . .

"Q.  Who is the steward?

"A.  John Krupa. He felt she had enough to drink. As I came in . . .

"Q.  What date was this you are talking about?

"A.  June 8, about 1:00 A.M., roughly. The discussion had been since John didn't want to give her a drink there was a little fuss about it. She laid her keys on the bar. Vince said. 'There are 3 officers over there, why don't you give them the keys if you want to quit.' And I came and she said, 'Why, Tommy, why won't he give me a drink?' And I said, 'He is the steward, he has the right not to give anybody a drink he wants.' She said to me, 'You open the club in the morning,' and hands me the keys. So I said to her . . .

"Q. Did you say, 'She handed me the keys?'

"A. She got the keys off the bar and said, 'You open the God Damn club.' I took the keys and walked in the back where the other 3 officers were sitting. And I said, 'Dorothy gave me the keys,' and I said, 'I will reconsider.' And I called her back to the back table and I sat there and talked to her. And I said, 'Dorothy, you are drunk. Here's your keys back. Why don't you come in and open the next morning.' I walked away. I sat near the 3 officers of the Club . . . . She came back to me and said, 'I quit.' And I said, 'If you quit don't ever come back to me. I will get somebody to open the club the next morning.' And that's what I did . . . ."

Based upon this evidence, the referee entered the following findings of fact which Appellant claims do not support the referee's legal conclusion of a voluntary termination:

"1. The claimant was last employed by Glendale Fireman's Association, Inc., for 7 years as a barmaid at $2.25 an hour, and her last day of work was June 7, 1974.

"2. Claimant was not scheduled to work June 8, 1974; however, she reported to the employer's establishment and became engaged in a disagreement with one of the trustees.

"3. As a result of the disagreement with one of the trustees claimant did not report for work as scheduled on June 9, 1974, or thereafter.

"4. Claimant did not discuss her disagreement with any other officers of the corporation.

"5. Claimant was not laid off nor discharged and continuing work was available had she desired to remain employed."

Although these findings are certainly lacking in the concrete specificity which facilitates judicial review, we must conclude that given the limited issue before us they

are adequate to sustain the referee's determination of a voluntary termination without cause of a necessitous and compelling nature within the meaning of Section 402(b)(1), 43 P.S. §802(b)(1). Although the voluntariness of a termination of employment is ultimately a question of law, its resolution necessarily depends upon the underlying facts as found by the compensation authorities. *See Sitkin Converting, Inc. v. Unemployment Compensation Board of Review*, 11 Pa. Commonwealth Ct. 604, 314 A.2d 534 (1974). We must infer from findings of fact #3 and 5 quoted above that the referee found that Appellant had quit her employment by finding that Appellant was neither laid off nor discharged, and never returned to work after the incident at the bar.

Having determined that the findings support the conclusion of a voluntary termination, we must also conclude that this finding is supported by the employer's testimony that Appellant stated her intention to quit by turning over her keys. While this evidence was certainly contradicted by the Appellant's version of the events surrounding her termination, the resolution of the conflict in the evidence, as well as a determination of the credibility of the witnesses, was for the referee and the Board, and cannot be disturbed on appeal. *Unemployment Compensation Board of Review v. Ruffel*, 18 Pa. Commonwealth Ct. 512, 336 A.2d 670 (1975); *Covell v. Unemployment Compensation Board of Review*, 16 Pa. Commonwealth Ct. 637, 330 A. 2d 319 (1975).

### ORDER

AND NOW, June 19, 1975, the order of the Unemployment Compensation Board of Review affirming the denial of benefits to Dorothy P. Beyer is affirmed, and this appeal is dismissed.